**Tina BARRON, Plaintiff,**

**v.**

**FORD MOTOR COMPANY OF CANA-
DA, LTD. and Ford Motor
Company, USA, Defendants.**

**No. 85–1305.**

United States District Court,
C.D. Illinois,
Peoria Division.

Aug. 26, 1988.

Dan Bandkleyder, Miami, Fla., Richard Grawey, Peoria, Ill., for plaintiff.

Thomas F. Tobin, Baker & McKenzie, Chicago, Ill., Nicholas J. Bertschy, Heyl,

---

Royster, Voelker & Allen, Peoria, Ill., for defendants.

## ORDER

MIHM, District Judge.

Presently before the Court is the Defendants' "Motion for Ruling that the Law of the State of North Carolina is the Applicable Law in this Case." The automobile accident which gave rise to this case occurred in North Carolina. The Plaintiff filed suit in the Circuit Court of the Seventeenth Judicial Circuit of the State of Florida from which it was removed to the United States District Court for the Southern District of Florida. Pursuant to a Motion for Transfer on the basis of the doctrine of forum non conveniens, the Florida District Court transferred this case to the United States District Court for the Central District of Illinois. The question now before this Court is what state law applies in this diversity action. The Court finds, for the reasons stated below, that the law of North Carolina applies.

## FACTS

In August of 1984, the Plaintiff was involved in a single vehicle automobile accident which occurred in the State of North Carolina, on North Carolina State Route 172 (Complaint ¶ 7). The automobile, a 1983 Ford Escort with a sun roof, had been purchased in January of 1984 from the Federal Credit Union at Camp LeJeune in North Carolina (Complaint ¶ 6). The automobile was purchased and owned by the Plaintiff's sister and brother-in-law, Patricia and Samuel Bass, who were both stationed at Camp LeJeune in North Carolina at the time of the purchase and at the time of the accident. (Complaint ¶ 7).

The Plaintiff, Juanita (Tina) Barron, was a citizen of Illinois prior to her move to North Carolina, where she lived with her sister. She babysat with their infant daughter, Lindsey, so that the couple could readily fulfill their military duties at Camp LeJeune. (Plaintiff's Dep. p. 8).

In the afternoon of August 10, 1984, Patricia Bass and the Plaintiff were en route to Camp LeJeune to pick up Samuel Bass. (Patricia Bass Dep. p. 10). Patricia Bass was driving the 1983 Ford Escort and Tina Barron was seated in the right front passenger seat. (*Id.* at 18). Lindsey Bass was in a car seat directly behind the driver's seat. (*Id.*)

The highway was wet from heavy rain earlier in the day, and it was drizzling at the time of the accident. (*Id.* at 11). While traveling 50 to 55 miles per hour (*Id.* at 13), Patricia Bass hit a puddle in the road and lost control of the automobile. The car ultimately ran off the road and overturned. (*Id.* pp. 16–19).

Neither Patricia Bass nor Lindsey Bass were thrown from the car or suffered injuries of any severity. (*Id.* at 20–21). The Plaintiff woke up lying on her back in a ditch. (Plaintiff's Dep. at 18). She suffered spinal injuries and as a result is now a paraplegic. (*Id.* at 31). Since the time of the accident, the Plaintiff has returned to live with her parents in Sheffield, Illinois, about 50 miles from Peoria. (*Id.* at 32).

## DISCUSSION

The question of applicable law is of particular concern in the instant case in light of the stark contrast between Illinois, Florida, and North Carolina substantive tort law. In the instant case, the Plaintiff relies upon the Crashworthiness Doctrine, which holds a manufacturer liable for additional injuries resulting from the negligent design of a product, even if the defect that caused the injuries to be enhanced is not the initial cause of the accident. *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968).

In the Complaint, the Plaintiff alleges no defect that caused the accident itself, but seeks to recover from the Defendants on a theory that the allegedly defective design of the sun roof caused the Plaintiff to be ejected from the automobile, thus aggravating her injuries. Plaintiff alleges that the negligent design of the retention system of the Ford Escort caused her to be injured more seriously than she would have been if the sun roof were properly designed.

Illinois and Florida strict liability law both recognize the Crashworthiness Doctrine. However, North Carolina law does not. *Wilson v. Ford Motor Corp.*, 656 F.2d 960 (4th Cir.1981).

The jurisdiction of this Court is based upon diversity of citizenship, and therefore, the Erie Doctrine applies. The Erie Doctrine requires that conflict of law questions be resolved by applying the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Although both parties spend time discussing the conflict of laws test applied by Illinois and North Carolina, the law is very well established that in a transfer case the applicable choice of law standard is that of the transferor state. The Supreme Court resolved this issue in the case of *VanDusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In its decision, the Supreme Court recognized an exception to the *Erie* and *Klaxon* Doctrines in the cases where the case had been transferred or venue changed pursuant to § 1404(a) of Title 28 of the United States Code.

In *VanDusen*, defendants moved to transfer to Massachusetts under § 1404(a) wrongful death actions brought in Pennsylvania by the personal representatives of the victims of an airplane crash in Boston. The motion was granted even though the district court recognized that plaintiff's legal claim might be seriously prejudiced by the application of Massachusetts rather than Pennsylvania law with regard to plaintiff's capacity to sue and recoverable damages. *VanDusen v. Barrack*, 84 S.Ct. at 816. The Supreme Court held that when the transfer was on the motion of the defendant, the transferee court must apply the law that would have been applied by the transferor court, so that a change in forum only means a change in courtrooms and not a change of law. *Id.* at 819–820.

The Court in *VanDusen* specifically reserved the question of what law applies if the transfer is on the plaintiff's motion or if a court of the transferor state would have dismissed an original action on the ground of forum non conveniens. Additionally, the Supreme Court reserved the question of what law applies if the transfer is granted under § 1406(a) of Title 28 because of a lack of venue in the original forum. *Id.* at 821.

The Court finds that, based upon the state of the law, there is no question that Florida's conflict of law test, as transferor state, is the applicable conflict of law test in this case. Florida applies the "most significant contacts" test of the Restatement Second of Conflicts of Law to determine the applicable law in tort actions. *Harris v. Berkowitz*, 433 So.2d 613 (Fla. 3rd D.C.A. 1983). The most significant relations test is embodied in § 6 of the Restatement Second of Conflicts of Law, and provides in pertinent part:

"Section 6 Choice of Law Principles.

(2) ... The factors relevant to the choice of the applicable rule of law include: (a) the needs of the Interstate and International Systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified exceptions, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied."

Comment (e) provides in pertinent part, as set forth in *Harris v. Berkowitz*, supra:

"Situations do arise ... where the place of injury will not play an important role of the selection of the state of the applicable law. This will be so, for example, when the place of injury can be said to be fortuitous or when for other reasons it bears little relation to the occurrence and the parties with respect to the particular issue...."

■ The cases to which Comment (e) appears to apply are those cases in which the injury occurs in a particular place as a result of the victim merely passing through that state. For example, automobile and airplane accident cases in which the victim

was traveling through a particular state enroute to some other destination, are frequently situations where the place of injury has been found to not be a less significant factor in selecting the applicable state law. See, *Proprietors Insurance Co. v. Valsecchi*, 435 So.2d 290 (Fla. 3rd D.C.A. 1983); *Harris v. Berkowitz*, supra.

The Plaintiff argues that North Carolina was the place of injury as a result of happenstance. However, it is the Court's opinion that this is not a case of happenstance, and therefore, is not a case to which Comment (e) was referring.

The place of injury was North Carolina, and as previously discussed, the injury did not occur in the course of interstate travel. Plaintiff was living for an indeterminate time in North Carolina with her sister's family, who were residents of North Carolina. The accident at issue did not occur in North Carolina by chance. It occurred while the Plaintiff, her sister and her niece were traveling from their home to Camp LeJeune, for the purpose of picking up the Plaintiff's brother-in-law from work. Therefore, the Court concludes that the exception to the rule, which exempts the factor of place of injury in cases of fortuitous or happenstance occurrence, is not applicable in the present case.

The Court will briefly review the factors set forth by § 6 of the Restatement Second of Conflicts of Law and the relevant evidence in the record which pertains to each factor. The first pair of factors, and perhaps the most controversial, address the issue of the relative interests of the potential forum states. Consistently, the courts have held that a forum with little or no interest in the outcome of particular litigation is not the appropriate forum's law to be applied. In the present case, there are potentially three forum laws which could be applied, Florida, Illinois or North Carolina.

This case's contacts with the State of Florida are somewhat unclear. The case was initially filed in state court in Florida, where the Plaintiff's attorneys have an office. There is nothing in the record to indicate that the Plaintiff ever lived in Florida, or even went to Florida. There are some references in the record that the Plaintiff was considering a move, although probably temporary, to Florida to receive medical treatment at the Spinal Cord Unit of Jackson Memorial Hospital/University of Miami, which is nationally acclaimed in this area. However, there is no evidence that this relocation or treatment ever occurred. Shortly after the case was filed, it was removed to the federal court for the Southern District of Florida, on the Motion of Defendant, and again shortly thereafter was transferred to the U.S. District Court for the Central District of Illinois, on Defendant's Motion to Transfer to a North Carolina District Court. Therefore, this Court does not believe there can be any reasonable argument made that Florida has any relevant ties to this case or that its law should be applied.

The Plaintiff strenuously argues that substantive Illinois law should be applied in this case. The Plaintiff points out that Illinois also adopts the significant contacts test as does Florida. However, what relevance this assertion is to the resolution of the issue before the Court is unclear.

The Plaintiff argues that since North Carolina has not adopted strict liability in tort, Illinois law must be applied in order to adequately protect the Plaintiff and her claim. She argues that there are solid public policy reasons for adopting not only strict liability in tort but the Crashworthiness Doctrine. See *Buehler v. Rhalen*, 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (1978); *Nanda v. Ford Motor Company*, 509 F.2d 213 (7th Cir.1974).

In an attempt to establish significant contacts between the instant automobile accident and the State of Illinois, the Plaintiff asserts that "Plaintiff's ties to Illinois are many:" (a) she lives in Illinois and Illinois has almost always been her home; (b) the Plaintiff accompanied her sister's family to North Carolina to babysit her niece with the intention of returning home to Illinois in a short period of time; (c) all physicians, therapists and other health care providers that will testify for the Plaintiff

are located in the general vicinity of the Plaintiff's home in Illinois.

Further, the Plaintiff discusses the fact that the defective product, the sun roof of the 1983 Escort, was designed and manufactured in a state other than North Carolina. The Defendant Company does not have any plants in North Carolina where it designs or manufacturers automobiles or sun roofs. This was a one-car collision and could have happened anywhere in the country. The driver of the car, the Plaintiff's sister, is no longer stationed at Camp Le-Jeune in North Carolina. There were no witnesses to the accident other than Donald Kenerly, Jr., who arrived on the scene after the accident occurred, and whose deposition has been taken for use at trial.

It is the Court's opinion that these "contacts" with Illinois are not of the nature that the Restatement intended to be sufficient to warrant the application of a particular state's law. Further, the Court finds that North Carolina's contacts significantly outweigh those of Illinois.

All of the significant acts in the instant case occurred in North Carolina. The alleged injury occurred in the State of North Carolina on a North Carolina highway. The alleged conduct of the Defendants had its effect upon the Plaintiff in North Carolina. The Defendants placed the allegedly defective automobile into the consumer market in North Carolina, and the automobile passed into the possession of the owners in North Carolina. The Defendants are engaged in doing business in North Carolina, and the Plaintiff was living in the State of North Carolina at the time of the accident.

Furthermore, North Carolina is one of the only, if not the only, state which has not adopted strict liability in tort. North Carolina has established that as a matter of public policy, its product liability statute permits recovery only under negligence and breach of implied warranty. (North Carolina General Statute 99B-1 to 99B-10). This statute, excluding recovery under the theory of strict liability, sets forth a policy that has been upheld by the appellate courts and the Supreme Court. Since North Carolina affords all manufacturers the benefit of not being sued in strict liability, the Defendant should not arbitrarily be excluded from that policy merely because the Plaintiff asserts an opportunity to recover under a more favorable theory.

North Carolina's product liability law is unique and is founded upon very specific and express public policy unique to that state. Two of the critical choice of law considerations set forth in § 6 of the Restatement Second of Conflicts of Law are: (1) certainty, predictability and uniformity of result; and, (2) ease in the determination and application of the law to be applied. Under the facts of this case, it appears that the law of North Carolina should be applied to insure the uniformity and application as intended by the Restatement.

A more basic set of factors that this Court may also consider in determining the most significant contacts, can be found in the Restatement Second Conflict of Law § 145, and include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. In the instant case, each of these inquiries requires "North Carolina" as the answer. The injury occurred in North Carolina; the automobile was placed in the stream of commerce in North Carolina; the residence of the Plaintiff at that time was North Carolina, and the Defendant was licensed to do business in that state; and, if anywhere, the "relationship" between the parties is centered in North Carolina. They have no other relationship or contacts elsewhere, according to the present record.

In sum, it is the Court's opinion that the substantive law of the State of North Carolina should be applied pursuant to the Florida Conflicts of Law test. All of the significant acts which gave rise to this cause of action occurred in North Carolina and at the time of the accident the Defendants were doing business in North Carolina, where the Plaintiff was residing. Further, there are substantial policy rea-

sons for this Court to apply North Carolina law, in light of North Carolina's unique protections afforded its manufacturers. Therefore, the Court finds that North Carolina substantive law must be applied in this case.

It is ordered that the Defendant's "Motion for Ruling that the Law of the State of North Carolina is the Applicable Law in this Case" is GRANTED.