Tina BARRON, Plaintiff,

v.

**FORD MOTOR COMPANY OF CANA-DA, LIMITED and Ford Motor Company, U.S.A., Defendants.**

No. 85–1305.

United States District Court, C.D. Illinois.

July 24, 1989.

---

Dan Bandkleyder, Miami, Fla., and Richard Grawey, Peoria, Ill., for plaintiff.

Thomas F. Tobin, Chicago, Ill., and Nicholas J. Bertschy, Peoria, Ill., for defendants.

## MEMORANDUM OPINION

MIHM, District Judge.

Plaintiff's Complaint sounds in negligence, strict liability and breach of implied warranty. Defendants filed a Motion for Summary Judgment on all three counts, premised on North Carolina's * substantive law. A hearing was held at which the Court heard arguments by the parties and ruled that the Motion for Summary Judgment as to the strict liability claim was granted but denying the Motion as to the negligence and breach of warranty claims. The Court indicated it would memorialize its ruling in a written opinion; this is that opinion.

■ Plaintiff's count in strict liability alleges that Defendants' use of a tempered glass sunroof created an ultrahazardous condition and that the sunroof shattered when the vehicle rolled over and caused the Plaintiff to be seriously injured when she was ejected from the vehicle. Plaintiff further alleges that the ultrahazardous condition existed when the vehicle left the manufacturer's control.

North Carolina substantive law does not recognize the doctrine of strict tort liability. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504, 509–10 (1980); *Holley v. Burroughs Wellcome Co.*, 74 N.C.App. 736, 330 S.E.2d 228 (1985); *Byrd Motor Lines v. Dunlop Tire & Rubber*, 63 N.C.App. 292, 304 S.E.2d 773, 778 (1983). Accordingly, summary judgment is granted as to the claim sounding in strict liability.

The Plaintiff's negligence allegations claim that Defendants breached a duty to warn of dangerous qualities inherent in the Ford Escort in which she was a passenger, which was designed, manufactured, and installed with a tempered glass sunroof that shattered when the vehicle rolled over, allegedly causing Plaintiff to be ejected from the vehicle. In essence, Plaintiff alleges that the vehicle was not crashworthy. In Plaintiff's breach of warranty allegations, she asserts that Defendants impliedly warranted that the vehicle was crashworthy and suitable for its intended use. Plaintiff further alleges that she relied upon that implied warranty and that Defendants' breach of the warranty caused her injury.

The North Carolina Supreme Court has not ruled on whether allegations that a vehicle was crashworthy or that the condition of a vehicle enhanced a Plaintiff's injuries state a cause of action under either negligence or breach of implied warranty.

The Circuit Court of Appeals for the Fourth Circuit, in which North Carolina is situated, has on three occasions had the opportunity to predict whether the North Carolina Supreme Court would recognize a negligence theory of crashworthiness and/or enhanced injury. *Erwin v. Jeep Corp.*, 812 F.2d 172 (4th Cir.1987); *Martin v. Volkswagen of America, Inc.*, 707 F.2d 823 (4th Cir.1983); *Wilson v. Ford Motor Co.*, 656 F.2d 960 (4th Cir.1980). In all three cases, the Fourth Circuit predicted that the North Carolina Supreme Court would not recognize the doctrine of crash-

---

* On August 26, 1988, 694 F.Supp. 1337, this Court issued its order finding that the substantive law of North Carolina is the law of this case.

worthiness and/or enhanced injury. In making these rulings, the Circuit Court of Appeals for the Fourth Circuit specifically relied upon the State Supreme Court's refusal to adopt the doctrine of strict tort liability. *Smith v. Fiber Controls Corp.,* 300 N.C. 669, 268 S.E.2d 504, 509–10 (1980). Circuit Judge Philips in his special concurrence in the *Martin* opinion stated as follows:

> ... North Carolina courts have not [adopted] such doctrinal expansions as strict liability and comparative negligence. While to some this may appear unenlightened, it may to others reflect a completely respectable and deep-seated attitude of judicial restraint and deference to legislative primacy in making significant changes in the long-established common law tort doctrine. In any event, judicial restraint in these related areas is a fact that must be taken into account by a federal diversity court in assessing the probable view of North Carolina's appellate courts on the propriety of judicially adopting the crashworthiness doctrine.

707 F.2d at 826.

Shortly before oral argument on Defendants' Motion for Summary Judgment was heard, the North Carolina Court of Appeals issued its opinion in the case of *Warren v. Columbo,* 377 S.E.2d 249 (N.C.App.1989). The justices in the *Warren* case wrote three separate opinions. In Judge Orr's lead opinion, he found that the plaintiff's complaint of enhanced injuries sufficiently stated a cause of action sounding in negligence.** (*Warren,* at 255). He specifically refused to consider the issue of whether the plaintiff's complaint stated a cause of action under a "crashworthiness" doctrine. In this regard, he stated: "We shall specifically address the issue as 'enhanced injury' and not 'crashworthiness' or 'second collision'."

In a concurring opinion, Judge Greene stated that he did "not find it necessary or helpful ... to recognize a new cause of action for enhanced injuries." Judge Greene found that the plaintiff's complaint stated a cause of action because it ex-

pressed "the notion that, within limits, automobile manufacturers may be held liable for injuries caused by their failure to take the possibility of automobile accidents into consideration in designing their products."

Judge Arnold dissented. He expressed his opinion that the " 'first impact' is the critical and sole event of proximate causation in vehicular collision cases, and therefore actions for enhanced injuries are precluded."

Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, a federal district court sitting in diversity must apply state substantive law. In *Erie,* this law was defined as being the law "declared by [the state's] Legislature in a statute or by its highest court in a decision." 304 U.S. at 78, 58 S.Ct. at 822. However, where a state supreme court has not addressed the issue before the district court, the district court must predict "how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657 (3rd Cir. 1980).

In determining how the supreme court would rule in a like case, the district court should consider the decisional law of the state supreme court, then decisions by the supreme court in analogous cases, and finally dicta by the state's highest court as well as decisions of lower state courts and other federal courts. *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 662 (3rd Cir.1980).

Thus, this Court is faced with a situation in which it must predict which analysis the state's highest court will adopt despite the absence of any statements by that court on the subject. While that court's statement regarding strict liability are informative, they are not dispositive. Likewise, the decisions of the Fourth Circuit may persuade but do not bind this Court. The state's appellate court decision in *Warren* must also be considered, since it is the only state court opinion on point.

** The plaintiff's warranty claims in *Warren* had been dismissed and were not part of the appeal.

The fact that the state has refused to adopt a theory of strict liability does not require a conclusion that the court would not find proximate causation in a case such as this one. The generally conservative approach of the court, in refusing to extend tort liability beyond what is authorized by the legislature, does not tell us how that court might define proximate causation, an element of traditional tort law. Furthermore, proximate causation is not the element that defines the difference between negligence and strict liability; rather knowledge or intent distinguishes the two.

Judge Greene in *Warren* basically analyzed the "enhanced injury" concept within the traditional notions of tort law, a relatively conservative method and one which is most persuasive. Accordingly, this Court predicts that, if faced with the issue, the Supreme Court of North Carolina would rule in essentially the same manner as Judge Greene that it is not necessary to recognize a new negligence cause of action in order to recognize the validity of a claim of enhanced injuries. Rather, the "enhanced injuries" or "crashworthiness" theory is "merely an expression for the 'notion that, within limits, automobile manufacturers may be held liable for injuries caused by their failure to take the possibility of automobile accidents into consideration in designing their products.' "

The Motion for Summary Judgment of the breach of warranty claim likewise raises only a question of law: whether North Carolina law recognizes implied warranties of crashworthiness. Neither party has cited any North Carolina law (statutory or common) which would mandate dismissal of this claim or even suggest that dismissal might be appropriate. Indeed, North Carolina General Statutes § 99B–2(b) explicitly envisions breach of implied warranty suits generally. If the warranty of crashworthiness was implied and breached (an issue not raised by any pleading), then the Court need make no modification or extension of existing law in order to allow the claim for breach of that warranty to proceed. Thus, the Motion for Summary Judgment on the breach of warranty claim is denied.

This Court makes no rulings with respect to what damages may be recovered in such actions or what defenses can be asserted to such actions.

It is hereby ordered that Defendants' Motion for Summary Judgment is GRANTED on the strict liability claim and DENIED on the negligence and breach of warranty claims.