MAX S. MILLER v. WINCIE CLARICE MILLER.

(Filed 20 March 1968)

**1. Automobiles § 42.1—**

Statutes requiring installation of seat belts on new vehicles registered in this State are not absolute safety measures and do not expressly or impliedly impose upon the occupant of an automobile a duty to use them. G.S. 20-135.2, G.S. 20-135.3.

**2. Same; Automobiles § 94—**

The failure of a guest passenger to use an available seat belt does not constitute contributory negligence barring recovery by the passenger for personal injuries received in an automobile accident caused by defendant driver's negligence.

**3. Negligence §§ 11, 13—**

Plaintiff's negligence. which concurs with that of defendant in producing the occurrence causing the original injury bars . all recovery, even though plaintiff's negligence was comparatively small, the doctrine of comparative negligence being inapplicable in this State. ·

**4. Damages § 9—**

The doctrine of avoidable consequences requires an injured plaintiff to minimize his damages caused by defendant's wrong, and prevents recovery for those damages which plaintiff could have reasonably avoided.

**5. Same; Negligence § 11—**

Contributory negligence occurs either before or at the time of defendant's negligence, while the doctrine of avoidable consequences arises after defendant's wrongful act.

**6. Automobiles § 42.1; Damages § 9—**

The doctrine of avoidable consequences is not invoked by the failure of plaintiff guest passenger to use an available seat belt, since the failure to fasten the seat belt occurs before defendant's negligence and plaintiff's injury, and further, there being no duty upon the passenger to use a seat belt.

HUSKINS, J., took no part in the consideration or decision of this case.

PARKER, C.J., concurs in result.

APPEAL by defendant from *Peel, J.,* 15 May 1967 Special Non-Jury Civil Session of MECKLENBURG, docketed and argued at the Fall Term 1967 as Case No. 278.

Action for personal injuries, heard on plaintiff's demurrer to the second and third defenses contained in defendant's answer.

Plaintiff alleges: On 6 February 1966, he was a passenger in his own 1960 Comet automobile, which defendant was driving northwardly on U. S. Highway No. 521 in Mecklenburg County. Near Pineville, defendant approached and entered a sharp curve at an excessive rate of speed. She lost control of the vehicle when she took her eyes off the road; it left the highway and overturned. In the upset plaintiff's automobile was damaged, and he suffered serious and permanent personal injuries. *Inter alia,* he sustained a compression fracture of the 11th dorsal vertebra. In consequence, he is entitled to recover $35,000.00.

Answering the complaint, defendant admitted that she lost control of the automobile on a curve and that plaintiff was injured when it turned over. She denied that the upset was caused by her negligence. As a first further answer and defense, she alleged that if she were guilty of negligence, as plaintiff avers, his own negligence contributed to his injury and damage in that he failed to protest or to take any steps for his own protection. Defendant's second and third defenses are set out verbatim as follows:

"AND FOR A SECOND FURTHER ANSWER AND DEFENSE, the defendant says that the automobile in which the plaintiff was riding was owned by him and was equipped with seat belts which were in good condition and were designed to hold a passenger in the automobile and on the seat in the event of an accident; that the plaintiff failed to use his seat belt or have the same fastened in any manner and that the plaintiff was injured when the automobile turned over on its top and the plaintiff fell out of the seat onto the top of the automobile; and that such injury to the plaintiff would not have occurred had he had his seat belt fastened in a proper manner; and the plaintiff, in failing to fasten his seat belt, knew or should have known that in the event of an accident, he would be likely to receive an injury by reason of not having his seat belt fastened, the injury which he did receive being of the kind and nature which he knew, or should have known, would occur as a consequence of not fastening his seat belt; and the plaintiff's failure to so fasten his

seat belt constituted negligence and was a proximate cause of the injury which he sustained; and

"The contributory negligence of the plaintiff in the foregoing particulars is pleaded in bar of any recovery by him in this action.

"AND FOR A THIRD FURTHER ANSWER AND DEFENSE, the defendant says that the failure of the plaintiff to fasten his seat belt was calculated to and did contribute to injuries which he received and in the event it should be determined that the plaintiff would have received some injury even though his seat belt had been fastened, the defendant says that the plaintiff failed to mitigate the damages to himself, failed to take reasonable steps to avoid said damages, and that to that extent the plaintiff is legally prevented from recovering said damages."

Plaintiff moved to strike the foregoing second and third defenses. Judge Peel treated the motion as a demurrer and sustained it. From his order that the second and third defenses be stricken, defendant appealed.

*A. A. Bailey by Gary A. Davis for plaintiff appellee.*
*Jones, Hewson & Woolard for defendant appellant.*

SHARP, J. In defendant's second further answer and defense, she pleads plaintiff's failure to fasten his seat belt as contributory negligence barring his right to recover any damages for personal injuries; in the third, she pleads that failure in mitigation of such damages. She alleges no unusual circumstance known to plaintiff prior to the accident, which created a special hazard over and above the ordinary risks incident to highway travel. The court sustained plaintiff's demurrer to both defenses. The question presented is: Does the occupant of an automobile have a duty to use an available seat belt *whenever* it is operated on a public highway?

Since 1 January 1964, the law of North Carolina has required that the front seat of every *new* motor vehicle of nine-passenger capacity or less (except motorcycles and one-passenger vehicles) shall, at the time the vehicle is registered in this State, be equipped with at least two sets of seat safety belts of a specified type. G.S. 20-135.2. Since 1 July 1966, the law has required that every such new vehicle "be equipped with sufficient anchorage units at the attachment points for attaching at least two sets of seat safety belts for the rear seat of the motor vehicle." G.S. 20-135.3. These statutes, however, contain no requirement that the occupant of an automobile use a seat belt.

Since 1960, thirty-three states and the District of Columbia have enacted seat-belt legislation. See Comment, *The Failure to Use Seat Belts as a Basis For Establishing Contributory Negligence, Barring Recovery on Personal Injuries,* 1 U. San Francisco L. Rev. 277 (1967) Appendix I, 290. Most of these statutes apply only to cars manufactured in 1962 or later. No state requires the belt to be used after installation except Rhode Island, which makes their use mandatory in certain government and public service vehicles only. Minnesota, Tennessee, and Virginia specify that a failure to use the seat belts shall not be deemed contributory negligence. 16 DePaul L. Rev. 521, 522 (1967); Roethe, *Seat Belt Negligence in Automobile Accidents,* 1967 Wis. L. Rev. 288, 289 [hereinafter cited as Roethe]. It appears, therefore, that the seat belt enactments are not absolute safety measures and that no statutory duty to use the belts can be implied from them. The North Carolina Legislature's failure to require the installation of belts in all licensed passenger vehicles and in buses, plus the limited requirement of only *two* sets of such belts in the front seat, supports this conclusion. Thus, if there be a duty to use an available seat belt, it is imposed by the common law.

When the occupant of an automobile is injured in a collision, upset, or deviation of the vehicle from the highway, it goes without saying that his failure to have his seat belt fastened did not contribute to the occurrence of the accident. *Brown v. Kendrick,* 192 So. 2d 49 (Fla. Dist. Ct. App. 1966); *Kavanagh v. Butorac,* ...... Ind. App. ......, 221 N.E. 2d 824 (1966). Obviously, however, in some accidents, an after-the-fact appraisal would reveal that his injuries would probably have been minimized had he been using a seat belt. But whether the occupant of an automobile was contributorily negligent in failing to fasten his seat belt must, of course, be determined in view of his knowledge of conditions prevailing prior to the accident, and not in the light of hindsight.

The conclusion that a motorist is negligent whenever he rides upon the highway with his seat belt unbuckled can be supported only by the premise that no reasonably prudent person would travel the highway without using an available seat belt. If this be true, every failure to use an available seat belt would be negligence *per se* — a proposition which defendant expressly disavows.

In spite of the well known hazards of highway travel and the daily toll which motor-vehicular accidents take in lives and property, most motorists do arrive safely at their destination. *Cierpisz v. Singleton,* 247 Md. 215, 230 A. 2d 629 (1967), and every person begins a trip upon that assumption. He believes that the chance of being involved in an injury-producing accident is relatively low. See

Note, 39 Colo. L. Rev. 605, 608 (1967). Conceding, however, that the reasonable man is aware of the general likelihood of accidents and knows subconsciously that one might happen to him, he drives or rides in the belief that he "need not truss himself up in every known safety apparatus before proceeding on the highway." (In addition to seat belts, shoulder harness, diagonal belts, and a combination of the two are now available equipment.) Kleist, *The Seat Belt Defense — An Exercise in Sophistry,* 18 Hastings L. J. 613, 615 (1967) [hereinafter cited as *Kleist*].

Seat belts are designed to prevent the serious injuries caused by ejection from the automobile and by buffeting about in it. Roethe points out that although statistics cannot be used to predict the extent of injuries resulting from automobile accidents involving persons using seat belts as compared to those who are not using them, statistics from safety studies do indicate that the seat belt is a valid safety device which significantly reduces injuries and fatalities in automobile accidents. Roethe at 292. See the discussion of some of these studies by Currie, C.J., in *Bentzler v. Braun,* 34 Wis. 2d 362, 149 N.W. 2d 626 (1967); National Safety Council, Accident Facts 53 (1967); 16 Am. Jur., Proof of Facts, Seat Belt Accidents § 5 (1965); Walker and Beck, *Seat Belts and the Second Accident,* 34 Insurance Counsel J. 349 (1967); 1 U. San Francisco L. Rev. 277 (1967). Notwithstanding, Roethe concludes:

"[T]he issue of the social utility of the use of seat belts is definitely not clarified in the minds of the public and the courts. Doubts remain as to whether seat belts cause injury, and the real usefulness of the seat belt in preventing injuries has not become public knowledge. . . .

"The social utility of wearing a seat belt must be established in the mind of the public before failure to use a seat belt can be held to be negligence. Otherwise the court would be imposing a standard of conduct rather than applying a standard accepted by society." Roethe at 296-97.

Figures collected by the National Safety Council indicate that in 1965, the average individual used his seat belt only 16% of the time he spent in an automobile. Note 39 Colo. L. Rev. 605, 608, n. 13 (1967); see also 16 Am. Jur., Proof of Facts, Seat Belt Accidents § 3 (1965). In 1967, the Council estimated that:

"Seat belts are now available to more than half of all passenger car occupants, but the belts are being used less than half of the time, on the average. As a consequence, the net usage figure — the per cent of all exposure hours during which passenger car occupants

are using seat belts — is estimated to be only 20 to 25 per cent." National Safety Council, Accident Facts 53 (1967).

If the foregoing statistics be correct, the average man does not customarily use his seat belt. Many people fail to use them because of the fear of entrapment in a burning or submerged car. See Annot., *Automobile Occupants' Failure to Use Seat Belt as Contributory Negligence*, 15 A.L.R. 3d 1428, 1430 (1967). There is also a belief that seat belts increase the frequency or severity of abdomen-pelvis and lumbar spine injuries. Roethe at 292. This belief, according to Kleist, has some foundation in fact:

". . . In the comprehensive study conducted by Motor Vehicle Research, Inc., hundreds of controlled crashes at various speeds with dummies simulating the human body placed in various positions with and without seat belts were observed by specially located cameras, and it was concluded that the standard waist type seat belts can cause more, rather than less, injuries in many crash conditions. Other researchers have reached the conclusion that the use of seat belts is limited in value. Therefore, whether or not the use of waist type seat belts is desirable remains at best speculative. Until more definitive answers are available the defense that the plaintiff is guilty of contributory negligence in not wearing a seat belt is subject to the objection that such a defense is pure conjecture.

". . . Assuming merely for the sake of argument that wearing seat belts would reduce injuries in 75 per cent of all collisions, the motorist, when he enters his car, cannot be assured that the collision he might have will not be one of the 25 per cent in which the seat belt might increase the degree of injury. In any given collision, no doctor can say exactly what injuries would have been suffered had the victim been wearing a seat belt as compared to those he suffered without it. There are too many unknown variables such as exact number, degree, direction, duration, and kinds of forces that might have been acting in any given accident to answer the question with any accuracy." Kleist at 614. See also 16 Am. Jur., Proof of Facts, Seat Belt Accidents § 43 (1965); *National Dairy Products Corporation v. Durham*, 115 Ga. App. 420, 154 S.E. 2d 752 (1967).

So far as our research discloses, no court has yet held an occupant's failure to buckle his seat belt to be negligence *per se. Lipscomb v. Diamiani*, 226 A. 2d 914 (Del. Super. Ct. 1967); *Brown v. Kendrick, supra; Kavanagh v. Butorac, supra; Cierpisz v. Singleton, supra*. If the failure to buckle a seat belt is not negligence *per se*, it could be contributory negligence only when a plaintiff's omission to use the belt amounted to a failure to exercise the ordinary care which a reasonably prudent person would have used *under the cir-*

*cumstances* preceding that particular accident. Since the facts and circumstances preceding any accident will vary, so must conduct constituting due care. Under what circumstances would a plaintiff's failure to buckle his seat belt constitute negligence? If a motorist begins his journey without buckling his belt, ordinarily he will not have time to fasten it when the danger of accident becomes apparent; so the duty to "buckle up" — if any — must have existed prior to the injury. Furthermore, it must be remembered that until one has, or should have, notice of another's negligence, he is not required to anticipate it. On the contrary, he is entitled to assume that others will use due care for his safety and their own. *Weavil v. Myers,* 243 N.C. 386, 90 S.E. 2d 733; 3 Strong, N. C. Index, Negligence § 7 (1960) ; *Lipscomb v. Diamiani, supra.*

If a plaintiff, a guest passenger injured in an automobile accident, knew the defendant to be an incompetent and dangerous driver or if he knew the defendant's automobile to be mechanically and dangerously defective, he would be guilty of contributory negligence in beginning the trip, and his failure to fasten his seat belt would add nothing to the defense. But suppose an unbelted plaintiff was the driver or a passenger in an automobile which collided with a tractor-trailer or other motor vehicle, the driver of which negligently caused the accident. Presumably, the driver of an automobile could require his guest passenger to fasten his belt or get out, but practically there seems no reason why the same rationale which applies to the unbelted guest-passenger who sues his driver should not also apply when he sues the driver of another vehicle. Conceivably a situation could arise in which a plaintiff's failure to have his seat belt buckled at the time he was injured would constitute negligence. It would, however, have to be a situation in which the plaintiff, with prior knowledge of a specific hazard — one not generally associated with highway travel and one from which a seat belt would have protected him — had failed or refused to fasten his seat belt. For instance, suppose a case in which the defendant driver tells the plaintiff-passenger to buckle his seat belt because the door on his side has a defective lock and might come open at any time. The passenger fails to buckle the belt and, in consequence, falls out of the automobile when the door comes open on a curve. Whether the plaintiff's conduct be called assumption of risk or contributory negligence, nothing else appearing, his failure to fasten the belt should bar his recovery for injuries thus received.

In the absence of a factual situation comparable to that indicated above — a situation in which the court would be justified in giving a peremptory instruction in favor of the defendant on the issue of

contributory negligence — there are no standards by which it can be said that the use of seat belts is required for one trip and not another. Without a meaningful standard for judgment, the triers of fact cannot find the failure to fasten a seat belt to be negligence. As Quillen, Judge, pointed out in *Lipscomb v. Diamiana, supra:*

"It is possible for reasonable men to analyze logically the variables presented by the issues of lookout and control, but it is extremely difficult to analyze the variables presented in failing to buckle a seat belt upon entering an automobile for normal, everyday driving. To ask the jury to do so is to invite verdicts on prejudice and sympathy contrary to the law. It is an open invitation to unnecessary conflicts in result and tends to degrade the law by reducing it to a game of chance.

". . . Everything does not have to be grey and a matter of balancing; some questions, such as stop signs and red lights, lend themselves to clear black and white determinations. . . . [T]he question of the use of seat belts is best resolved by a fixed standard. An occupant of a car involved in normal, everyday driving should either be required to wear a seat belt or he should not. That determination should be left to the distinguished members of our State Legislature." *Id.* at 917-18.

No reported case has come to our attention in which a plaintiff's failure to use an available seat belt has barred him from recovering damages for personal injuries sustained in an automobile accident caused by a defendant's negligence.

In *Bentzler v. Braun,* 34 Wis. 2d 362, 149 N.W. 2d 626 (1967), the plaintiff-passenger, who failed to use an available seat belt, was thrown forward when her driver collided with the rear of another car. She suffered facial and leg injuries; the driver, who also failed to use his seat belt, sustained minimal injuries. The Wisconsin court said that, while failure to use the seat belt does not alone prove causation, where the evidence indicates a causal relation between the injury sustained and the failure to use a seat belt, the jury should be instructed to apportion the damages. Although the court said that it is not negligence *per se* to fail to use an available seat belt, it said that there is a duty based on the common-law standard of ordinary care to use the belt. It held, however, that the evidence disclosed no causal relation between plaintiff's injuries and her failure to use the belt. This opinion brings to mind the law teacher's admonition that a student should look more closely at what the courts do than what they say.

In *Cierpisz v. Singleton,* 247 Md. 215, 230 A. 2d 629 (1967), the plaintiff, an unbelted guest-passenger in the defendant's automobile,

was injured when the defendant's vehicle collided with another vehicle, and she was thrown against the rear-view mirror. The driver, whose belt was also unfastened, was not injured. The trial judge refused to charge the jury that the plaintiff's failure to use her seat belt constituted contributory negligence barring her recovery, and the Court of Appeals found no error. It was persuaded, it said, "for the present at least," of the correctness of Roethe's statement that "[t]he social utility of wearing a seat belt must be established in the mind of the public before failing to use a seat belt can be held to be negligence." *Id.* at 226, 230 A. 2d at 635. The decision, however, was based upon the holding "that the failure to use the seat belt, standing alone, is not evidence sufficient to support a finding of contributory negligence." No expert testimony was produced at the trial, and the court said, "There was no showing that she would not have injured herself in the same manner if the seat belt had been fastened." *Id.* at 228, 230 A. 2d at 635.

In *Kavanagh v. Butorac,* ...... Ind. App. ......, 221 N.E. 2d 824 (1966), the plaintiff was an unbelted passenger in an automobile which collided with the defendant's vehicle. The plaintiff lost an eye and suffered other injuries by "forcible contact" with the rear-view mirror. The court declined to recognize "a new common-law doctrine" that the failure to use available seat belts is contributory negligence as a matter of law. It also declined to hold the doctrine of avoidable consequences applicable to the evidence in the case in spite of the testimony of a safety expert, that, in his opinion, the plaintiff would not have struck the rear-view mirror if his seat belt had been properly fastened. The court held that the trial judge, who heard the case without a jury, was at liberty to regard favorably or to disregard utterly this expert testimony. He disregarded the evidence, and the court said that the expert opinion was not conclusive proof that the eye injury would not have occurred. "Only by speculation can it be said that the injuries would not have occurred if the seat belt was fastened." *Id.* at 833. The import of this case is not altogether clear; the result is — the plaintiff recovered $100,000 for the loss of his left eye.

The question of seat-belt negligence has arisen upon the pleadings in three cases. In *Brown v. Kendrick,* 192 So. 2d 49 (Fla. Dist. Ct. App. 1966), the trial court struck the defense that the plaintiff, an unbelted guest-passenger, had not used an available safety belt. The District Court of Appeals said the court did not err in refusing to allow evidence of the plaintiff's failure to use the seat belt; that if such failure is to constitute negligence, the legislature should so declare.

In *Sams v. Sams,* 247 S.C. 467, 148 S.E. 2d 154 (1966), the de-

fendant pled the plaintiff's failure to use an available seat belt as contributory negligence, and the trial court struck the defense. The Supreme Court reversed, saying that the ultimate question should be decided in the light of all facts and circumstances adduced upon the trial rather than upon the pleadings.

In *Lipscomb v. Diamiani*, 226 A. 2d 914 (Del. Super. Ct. 1967), Quillen, Judge, after reviewing all the then reported seat-belt cases, concluded that *Brown v. Kendrick, supra,* stated the best rule for Delaware. He denied the defendant's motion to amend his answer to raise the affirmative defense of failure to use a seat belt. Of the three cases which arose upon the pleadings, only *Lipscomb v. Diamiani* discusses the fundamental problems involved in "seat belt negligence."

In *Mortensen v. Southern Pacific Company,* 245 Cal. App. 2d 241, 53 Cal. Rptr. 851 (1966), the California District Court of Appeals, in a Federal Employers Liability Act case, concluded that it was for the jury to decide whether the defendant's failure to provide seat belts amounted to negligence by the employer in failing to supply the driver of a pickup truck with a safe place to work.

In *Tom Brown Drilling Co. v. Nieman,* 418 S.W. 2d 337 (Tex. Civ. App. 1967), and in *Brown v. Bryan,* 419 S.W. 2d 62 (Mo. 1967), the courts declined to pass upon the question whether there was a common-law duty to use an available seat belt. In the former, it said there was no evidence that plaintiff's decedents would not have died as a result of the accident had they been using their seat belts. In the latter, evidence that defendant's automobile was equipped with seat belts which plaintiff-passenger was not using at the time of the accident was admitted without objection.

So far as our research has disclosed, the foregoing cases appear to be the reported judicial pronouncements to date on "seat belt negligence."

In North Carolina, and in those states which do not apply the doctrine of comparative negligence, a plaintiff's negligence which concurs with that of the defendant in producing the occurrence which caused the original injury will bar all recovery, even though the plaintiff's negligence was comparatively small. *Moore v. Boone,* 231 N.C. 494, 57 S.E. 2d 783; 3 Strong, N.C. Index, Negligence § 11 (1960) ; 22 Am. Jur. 2d *Damages* § 31 (1965).

It would be a harsh and unsound rule which would deny all recovery to the plaintiff, whose mere failure to buckle his belt in no way contributed to the accident, and exonerate the active tortfeasor but for whose negligence the plaintiff's omission would have been harmless. See Case Digest, 46 Neb. L. Rev. 176 (1967); 12

S. D. L. Rev. 130 (1967). Furthermore, it is doubtful that such a rule would increase the use of seat belts. In the case comment on *Brown v. Kendrick, supra,* 39 Colo. L. Rev. 605, 608, it is said, "[I]mposing an affirmative legal duty of wearing seat belts will have virtually no effect on the actual seat-belt wearing habits of automobile occupants. Its only effect would be to give an admitted wrongdoer a chance to dodge a substantial portion of his liability." It could never, of course, defeat a plaintiff's claim for property damage.

Needless to say, the seat-belt defense, which would bar an otherwise innocent victim, would not be popular with the jury or trier of facts. See *Kavanagh v. Butorac, supra, Bentzler v. Braun, supra;* Kleist at 616-19; see also Note, 39 Colo. L. Rev. 605, 608, n. 14 (1967).

Due care is measured by the customary conduct of the reasonably prudent man. The scant use which the average motorist makes of his seat belt, plus the fact that there is no standard for deciding when it is negligence not to use an available seat belt, indicates that the court should not impose a duty upon motorists to use them routinely whenever he travels upon the highway. If this is to be done, it should be done by the legislature. *Brown v. Kendrick, supra.* See Note, 12 S.D. L. Rev. 130.

Should the duty to use a seat belt be imposed — either by the legislature or by the court —, the issue of proximate cause would then loom. See Note, 39 Colo. L. Rev. 605. "The inability to prove a relationship between the injuries sustained and the failure to use a seat belt is a major problem which must be resolved before failure to use a seat belt can be held to be contributory negligence." Roethe at 298. Should the use of seat belts be required by law, there is little doubt that the testimony of professional safety experts would be made available to both plaintiff and defendant. Notwithstanding, it would probably remain a matter of conjecture to what extent a motorist's injuries are attributable to his failure to use a seat belt and whether, had it been used, other and different injuries would have resulted. Furthermore, it is safe to assume that, if an unbelted plaintiff sustained an injury in an automobile accident, he would also have suffered some injury — albeit minor — from buffeting even had he been wearing his seat belt. Therefore, since plaintiff would have suffered some injury as a result of the *occurrence* which resulted *solely* from the defendant's negligence, defendant's plea of contributory negligence could not be good as to those injuries. Proof of injury resulting from negligence entitles a plaintiff to nominal damages at least. *Potts v. Howser,* 267 N.C. 484, 148 S.E. 2d 836; *Mid-*

*gett v. Highway Commission,* 265 N.C. 373, 144 S.E. 2d 121; *Lieb v. Mayer,* 244 N.C. 613, 94 S.E. 2d 658.

If a plaintiff's failure to buckle his seat belt were held to affect an injured plaintiff's right to recover from an active tort-feasor, it could logically be done only by minimizing his damages, that is, excluding those which it could be shown a seat belt would have prevented.

The rule in North Carolina is that an injured plaintiff, whether his case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If he fails to do so, for any part of the loss incident to such failure, no recovery can be had. *Johnson v. R. R.,* 184 N.C. 101, 113 S.E. 606. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable. 22 Am. Jur. 2d *Damages* §§ 30-32 (1965). It has its source in the same motives of conservation of human and economic resources as the doctrine of contributory negligence, but "comes into play at a later stage." McCormick, Damages § 33 (1935); Prosser, Torts § 64 at 433 (1964).

"The doctrine of avoidable consequences is to be distinguished from the doctrine of contributory negligence. Generally, they occur — if at all — at different times. Contributory negligence occurs either before or at the time of the wrongful act or omission of the defendant. On the other hand, the avoidable consequences generally arise after the wrongful act of the defendant. That is, damages may flow from the wrongful act or omission of the defendant, and if some of these damages could reasonably have been avoided by the plaintiff, then the doctrine of avoidable consequences prevents the avoidable damages from being added to the amount of damages recoverable." 22 Am. Jur. 2d *Damages* § 31 (1965).

The seat-belt situation does not fit the doctrine of avoidable consequences because the failure to fasten the seat belt occurred before the defendant's negligent act and before the plaintiff's injury. *Lipscomb v. Diamiani, supra.* See Kleist at 620. *Cf.* Note, 38 S. Cal. L. Rev. 733 (1966). Nevertheless, it is closely analogous. The same considerations, however, which reject the proposition that a motorist's failure to fasten a seat belt whenever he travels is negligence impel the rejection of the theorem that such a failure should reduce his damages. If there is no duty to fasten a seat belt, such a failure cannot be held to be a breach of the duty to minimize damages. Even were there a statutory requirement that a motorist fasten his seat belt every time he ventured upon the highway — a requirement which

would create the duty and provide the standard now lacking —, the complicated task of damage apportionment would "invite verdicts on prejudice and sympathy contrary to the law," create "unnecessary conflicts in result," and "degrade the law by reducing it to a game of chance." *Lipscomb v. Diamiani, supra* at 917.

The problem of conjectural damages cannot be dismissed lightly when the question is what would have been the extent of the injury had the seat belt been used and what happened because the seat belt was not used. It would involve "an extreme extension of judgment." *Id.* at 918. In discussing the difficult problem presented when the plaintiff's prior conduct is found to have played no part in bringing about an impact or accident, but to have aggravated the ensuing damages, Prosser makes this observation: "Cases will be infrequent, however, in which the extent of aggravation can be determined with any reasonable degree of certainty, and the court may properly refuse to divide the damages upon the basis of mere speculation." Prosser, Torts § 64 at 434 (1964).

We hold that defendant has alleged no facts which would constitute contributory negligence on the part of plaintiff or which invoke the doctrine of avoidable consequences.

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.

PARKER, C.J., concurs in result.