HUDSON, Justice.
**819 Here we consider whether the trial court erred in setting aside the jury's verdict in this medical malpractice suit on the ground that the jury awarded insufficient damages to plaintiff Billy Bruce Justus (plaintiff) after finding that defendant Michael J. Rosner, M.D. performed unnecessary surgeries on plaintiff's now-deceased wife, Pamela Jane Justus. For the reasons stated below, we affirm the decision of the Court of Appeals to remand this action for a new trial.
I. FACTUAL AND PROCEDURAL BACKGROUND
Pamela came to Dr. Rosner in 2000 after suffering from serious neurological symptoms for many years and being treated by a variety of neurologists and pain clinics since the mid-1990s. She complained to Dr. Rosner of severe pain in the back of her neck and right temple as well **820 as diminished memory and cognition, dizziness, and balance problems. Based upon his examination, Dr. Rosner discussed with Pamela the possibility of performing a laminectomy surgery to decompress her spinal cord. Pamela elected to undergo the laminectomy, which Dr. Rosner performed in June 2000. *767 By December 2000, Pamela reported to Dr. Rosner that she was doing "horribly" and experiencing severe neck pain. Based upon Dr. Rosner's advice, Pamela agreed to undergo a C1 laminectomy and suboccipital craniectomy, which Dr. Rosner performed in February 2001. Dr. Rosner last saw Pamela as a patient on 21 March 2001. During that appointment, she was advised to return in two months and to contact Dr. Rosner's office several weeks beforehand if she had not improved significantly so that an MRI could be ordered. Pamela called Dr. Rosner's office on 29 May 2001 complaining of severe neck pain and an inability to hold her head up. Dr. Rosner's physician's assistant advised Pamela to return for an MRI, but Pamela refused to return, stating that she was "afraid" to come back to the office and that her insurance was no longer accepted.
Over the following months and years, Pamela saw numerous doctors for diagnosis and treatment of her neck condition. In just the year after she stopped seeing Dr. Rosner, she made at least nine medical visits for various reasons and procedures, including: an MRI in August 2001; possible treatments for vocal cord damage stemming from Dr. Rosner's February 2001 surgery; neurological evaluations at multiple practices; and injections for nerve pain.
In April 2004 Domagoj Coric, M.D. performed a fusion surgery on Pamela's neck to address her inability to lift her head off of her chest. After that surgery did not solve the problem, Dr. Coric performed a second operation in 2011. Pamela passed away in September 2012; her death certificate listed non-alcohol related kidney and liver problems as her immediate cause of death.
In June 2003, plaintiff and Pamela filed suit against Dr. Rosner; and his medical practice, Michael J. Rosner, P.A. (defendants); and Fletcher Hospital, Inc. d/b/a Park Ridge Hospital, Adventist Health System, and Adventist Health System Sunbelt Healthcare Corporation (the hospital defendants). The complaint included claims against Dr. Rosner for negligence, lack of informed consent, fraud, loss of consortium, the value of services rendered to Pamela, and willful and wanton conduct. The thrust of the suit was that Dr. Rosner performed unwarranted, unnecessary, and contraindicated experimental surgeries on Pamela and failed to fully inform her of their novelty and risks. This case, along with twenty-four related actions against Dr. Rosner, was designated as exceptional **821 under Rule 2.1 of the General Rules of Practice for the Superior and District Courts. After Pamela passed away in 2012, plaintiff, in his capacity as administrator of her estate, was substituted as a party plaintiff for Pamela and allowed to amend the complaint to assert claims for wrongful death and civil conspiracy.
The case was tried in Superior Court, Henderson County, beginning on 28 July 2014 before Judge Zoro J. Guice, Jr. During the trial, Dr. Rosner offered the testimony of several expert witnesses who suggested that Pamela could have avoided the chin-on-chest deformity she developed as a result of Dr. Rosner's surgeries if she had returned specifically to him for follow-up care. For instance, Michael Seiff, M.D. testified in pertinent part as follows:
Q. And to your knowledge, did [Pamela] follow up as instructed with Dr. Rosner ?
A. No.
Q. Had she done so, as an expert in the field of neurosurgery, do you believe that this chin-on-chest deformity could have been avoided with appropriate follow-up by [Pamela] with Dr. Rosner ?
A. Absolutely.
(Emphases added.) Similarly, an exchange with Konstantin Slavin, M.D. went as follows:
Q. ... [D]id you know that Pam Justus stopped going to Dr. Rosner and was essentially-I don't want to say lost in follow-up. She refused to return to Dr. Rosner following her second operation. Were you aware of that?
A. That's my understanding, yes.
Q. Do you believe, Doctor, had she followed up with Dr. Rosner , that this deformity, this chin-to-chest, this kyphosis, could have been caught earlier and remedied earlier, had she simply been following up as she should have?
A. That's a definite possibility, yes.
*768 (Emphases added.) Likewise, the examination of Donald Richardson, M.D. included the following exchange:
Q. ...[H]ave you, as a neurosurgeon, who's looked at the films, who's looked at the records, have you formed **822 an opinion to a reasonable degree of medical certainty about whether or not Pam Justus's failure to follow up with Dr. Rosner was a proximate cause of her development of chin-on-chest deformity? The question is simply yes or no.
A. Yes.
(Emphasis added.)
The jury returned its verdict on 25 September 2014 finding defendants liable for negligence and finding no liability against defendants on other grounds or against the hospital defendants.[1] On its verdict form, the jury found that Pamela had suffered damages in the amount of $512,162.00 but that her damages should be reduced by $512,161.00 because of her "unreasonable failure ... to avoid or minimize her damages." Accordingly, the trial court entered judgment in the amount of $1.00.
On 31 October 2014, plaintiff moved to alter or amend the judgment under Rule 59 of the North Carolina Rules of Civil Procedure. Specifically, plaintiff asserted that the jury's finding regarding Pamela's failure to mitigate damages was "contrary to the greater weight of credible testimony" and "contrary to law," and displayed "a manifest disregard of the jury to the instructions of the [c]ourt." Plaintiff asserted that the principal evidence to support the mitigation finding was that Pamela did not return to Dr. Rosner for follow-up care and that, as a matter of law, "she had no duty to seek medical attention specifically from Dr. Rosner rather than from other health care providers." Plaintiff also argued that the evidence showed that Pamela affirmatively took reasonable steps to mitigate damages by seeing numerous doctors in the wake of Dr. Rosner's negligent surgeries.
Following a hearing, the trial court entered an order on 3 March 2015 granting plaintiff's Rule 59 motion. Regarding the jury's mitigation of damages verdict, the court found that (1) Dr. Rosner's expert witnesses in neurology "testified that Mrs. Justus' condition could have been ameliorated had she promptly sought follow-up care from Dr. Rosner" and (2) "the overall impression created by these witnesses (and thus communicated to the jury) is that Mrs. Justus had an obligation to return specifically to Dr. Rosner ; and that, by failing to do so, she allowed her condition to worsen." The court further found that "[t]here was no evidence presented that Ms. Justus unreasonably delayed trying to have her **823 problems diagnosed and corrected" and that, "[g]iven the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages." In addition, the court found that "the amount of the jury's mitigation finding-i.e., that Mrs. Justus' condition was almost entirely her own fault (except for $1.00)-vastly exceeds, and is grossly disproportionate to, the extent to which, according to Dr. Rosner's neurosurgical experts, her condition could have been ameliorated had she timely sought follow-up care."
In its conclusions of law, the trial court determined that "[p]atients have no legal obligation to seek medical treatment from any particular health care provider" and that "[t]he testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading." The court also concluded that "Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages" and that the "jury's $1.00 damage award is manifestly inadequate." The court further concluded that the "jury also appears to have reduced its damage finding ($512,161.00) under the influence of passion or prejudice; specifically, the cumulative impact of misleading testimony from multiple experts." The court also noted that "[e]ven aside from the lack of evidence to support any mitigation finding at all, the *769 influence of passion or prejudice is further manifested in the grossly excessive amount of the jury's mitigation finding."
As a result of these and other findings and conclusions, the trial court set aside the jury's verdict and the court's judgment and entered an amended judgment awarding damages in the amount of $512,162.00. The court also entered an order awarding costs to plaintiff in the amount of $175,547.59. Defendants appealed from the order granting the motion to alter or amend the judgment, the amended judgment, and the order awarding costs.
At the Court of Appeals, defendants argued that the trial court erred by setting aside the jury verdict based on the mitigation of damages issue. In the alternative, they argued that even if the trial court did not err in granting the Rule 59 motion, it erred by entering an amended judgment rather than granting a new trial on all issues, including the defense of contributory negligence, upon which the trial court had declined to instruct the jury. Defendants also argued that the trial court's award of costs constituted reversible error. The Court of Appeals issued a partially divided opinion on 20 June 2017 in which the majority upheld the trial **824 court's decisions to set aside the jury verdict, deny defendants' request to instruct the jury on contributory negligence, and award costs. Justus v. Rosner , --- N.C. App. ----, 802 S.E.2d 142 (2017). It concluded, however, that the trial court erred by entering an amended judgment rather than ordering a new trial. The Court of Appeals vacated the amended judgment and remanded for a new trial on damages. The dissent agreed with the majority that the trial court properly refused to deliver a contributory negligence instruction and that, once it decided to set aside the verdict, the trial court should have ordered a new trial rather than entering an amended judgment; however, the dissenting judge disagreed that the trial court had sufficient grounds to set aside the verdict or enter its order of costs. Defendants filed a notice of appeal to this Court based on the dissent. We also allowed defendants' petition for discretionary review on the issues of contributory negligence and whether the new trial should again address defendants' liability for Pamela's injuries, rather than being confined only to the issue of damages.
II. ANALYSIS
A. Rule 59
In their appeal based on the dissenting opinion, defendants contend that the Court of Appeals majority erred by upholding the trial court's decision to grant plaintiff's motion to set aside the jury verdict under Rule 59(a). Although the trial court and the Court of Appeals touched upon a number of potential grounds for setting aside the verdict, we need only conclude that one ground supports the trial court's decision to grant relief pursuant to Rule 59 in order to affirm that ruling. Rule 59 states, in part, that "[a] new trial may be granted to all or any of the parties and on all or part of the issues" based upon, among other grounds, "[i]nsufficiency of the evidence to justify the verdict or that the verdict is contrary to law." N.C. R. Civ. P. 59(a)(7). Here the trial court concluded that "Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages," that "[t]he jury's $1.00 damage award is manifestly inadequate," and that "the influence of passion or prejudice is further manifested in the grossly excessive amount of the jury's mitigation finding," which falls within Rule 59(a)(7)'s ground of "[i]nsufficiency of the evidence to justify the verdict."
"[A] motion for a new trial for insufficiency of the evidence pursuant to Rule 59(a)(7) is addressed to the discretion of the trial court." In re Will of Buck , 350 N.C. 621, 624, 516 S.E.2d 858, 860 (1999) (citing **825 Bryant v. Nationwide Mut. Fire Ins. Co. , 313 N.C. 362, 380-81, 329 S.E.2d 333, 343-44 (1985) ); see also Worthington v. Bynum , 305 N.C. 478, 482, 290 S.E.2d 599, 602 (1982) (plurality opinion) ("It has been long settled in our jurisdiction that an appellate court's review of a trial judge's discretionary ruling either granting or denying a motion to set aside a verdict and order a new trial is strictly limited to the determination of whether the record affirmatively demonstrates a manifest *770 abuse of discretion by the judge." (citing Goldston v. Chambers , 272 N.C. 53, 59, 157 S.E.2d 676, 680 (1967) ) ). Accordingly, "in the absence of an abuse of discretion, a trial court's ruling on a motion for a new trial due to the insufficiency of evidence is not reversible on appeal." In re Buck , 350 N.C. at 624, 516 S.E.2d at 860.
We have explained that in the Rule 59(a)(7) context, the phrase " 'insufficiency of the evidence' means that the verdict 'was against the greater weight of the evidence.' " Id. at 624, 516 S.E.2d at 860 (quoting Nationwide Mut. Ins. Co. v. Chantos , 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979) ). Therefore, "[t]he trial court has discretionary authority to appraise the evidence and to 'order a new trial whenever in [its] opinion the verdict is contrary to the greater weight of the credible testimony.' " Id. at 624-25, 516 S.E.2d at 860 (quoting Britt v. Allen , 291 N.C. 630, 634, 231 S.E.2d 607, 611 (1977) ). Finally, in applying the abuse of discretion standard, "[a]n appellate court should not disturb a discretionary Rule 59 order unless it is reasonably convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." Id. at 625, 516 S.E.2d at 861 (quoting Anderson v. Hollifield , 345 N.C. 480, 483, 480 S.E.2d 661, 663 (1997) (emphasis added) ).
Here, the trial court's order granting plaintiff's Rule 59 motion included the following findings of fact:
5. Dr. Rosner contended at trial that Mrs. Justus unreasonably failed to mitigate her damages.
6. To support the foregoing defense, Dr. Rosner called four neurosurgical experts (Drs. Michael Seiff, Donald Richardson, Peter Jannetta, and Konstantin Slavin) to testify on his behalf.
7. These neurosurgical experts testified that Mrs. Justus' condition could have been ameliorated had she promptly sought follow-up care from Dr. Rosner.
8. Based upon the Court's opportunity to observe the evidence as it was presented and the attendant circumstances, together with the demeanor of Dr. Rosner's neurosurgical experts and considering all of their testimony **826 in context, this Court finds that the overall impression created by these witnesses (and thus communicated to the jury) is that Mrs. Justus had an obligation to return specifically to Dr. Rosner ; and that, by failing to do so, she allowed her condition to worsen.
9. That Dr. Rosner elicited this testimony from four different experts, moreover, intensified its cumulative impact upon the jury.
10. There was no evidence presented that Ms. Justus unreasonably delayed trying to have her problems diagnosed and corrected.
11. On the contrary, her attempts to mitigate her damages were reasonable and all that could be expected.
12. Given the uncontested evidence that Ms. Justus promptly and persistently made diligent efforts to obtain treatment from other physicians after she terminated her relationship with Dr. Rosner, no reasonable person could conclude that she failed to exercise reasonable care to mitigate her damages.
The trial court's conclusions of law included the following:
1. Patients have no legal obligation to seek medical treatment from any particular health care provider.
2. Mrs. Justus therefore had no duty to return to Dr. Rosner, rather than to other health care providers.
3. The testimony by Dr. Rosner's neurosurgical experts suggesting that Mrs. Justus had a duty to return specifically to Dr. Rosner was inaccurate and misleading.
4. The misleading effect of the foregoing testimony was compounded by its repetition from four different expert witnesses.
5. Dr. Rosner presented no legally competent evidence sufficient to support a finding that Mrs. Justus unreasonably failed to mitigate her damages.
The Court of Appeals majority held that "the trial court's actions, in determining evidence of mitigation of damages was insufficient to justify the verdict, did not amount to an abuse of discretion." Justus , --- N.C. App. at ----, 802 S.E.2d at 151. We agree.
*771 **827 Regarding a plaintiff's duty to mitigate damages,
[t]he rule in North Carolina is that an injured plaintiff, whether h[er] case be tort or contract, must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. If [s]he fails to do so, for any part of the loss incident to such failure, no recovery can be had. This rule is known as the doctrine of avoidable consequences or the duty to minimize damages. Failure to minimize damages does not bar the remedy; it goes only to the amount of damages recoverable.
Miller v. Miller , 273 N.C. 228, 239, 160 S.E.2d 65, 73-74 (1968) (first citing Johnson v. Atl. Coast Line R.R., Co. , 184 N.C. 101, 113 S.E. 606 (1922) ; and then citing 22 Am. Jur. 2d Damages §§ 30 - 32 (1965) ).
In their brief to this Court, defendants challenge the trial court's determination that the jury's finding that Pamela failed to mitigate all but $1.00 in damages resulted from the impression created by defendants' experts that Pamela's damages were principally caused by her failure to return specifically to Dr. Rosner for follow-up care after the second surgery he performed on her. As the excerpts from the expert testimonies set forth above show, however, there was evidence at trial to support the trial court's finding that defendants' experts created the impression that Pamela had a duty to return to Dr. Rosner in particular and that this impression influenced the jury's decision to award only nominal damages.[2]
Moreover, defendants do not argue that a patient's failure to seek additional treatment from the doctor who provided negligent medical care to her-care which caused or contributed to the very harm the patient needed to mitigate-constitutes a failure to mitigate damages. Defendants do not dispute that a plaintiff is required only to "exercise reasonable care and diligence to avoid or lessen the consequences of **828 the defendant's wrong." Miller , 273 N.C. at 239, 160 S.E.2d at 74. We have already noted that the evidence showed that, after leaving Dr. Rosner's care, Pamela did seek and obtain further medical care from a variety of other medical professionals, including undergoing an MRI on 17 August 2001-the same diagnostic test recommended to Pamela by Dr. Rosner's physician's assistant during the 29 May 2001 phone call.
The jury's determination of "failure ... to minimize damages" is further undermined by the evidence that much of the pain and suffering Pamela experienced as a result of Dr. Rosner's negligent surgeries occurred before she would have had the opportunity to mitigate damages. Even so, the jury found that she completely failed to mitigate damages except for $1.00.
Given this evidence, we cannot say that the trial court's decision to set aside the jury's verdict was an abuse of discretion because we are not "convinced by the cold record that the trial judge's ruling probably amounted to a substantial miscarriage of justice." In re Buck , 350 N.C. at 625, 516 S.E.2d at 861 (quoting Anderson , 345 N.C. at 483, 480 S.E.2d at 663 ). As we have reiterated over the years,
our appellate courts should place great faith and confidence in the ability of our trial judges to make the right decision, fairly and without partiality, regarding the necessity [of] a new trial. Due to their active participation in the trial, their first-hand acquaintance with the evidence presented, their observa[tions] of the parties, the witnesses, the jurors and the attorneys involved, and their knowledge of various other attendant circumstances, presiding judges have the superior advantage in best *772 determining what justice requires in a certain case.
Id. at 626, 516 S.E.2d at 861 (quoting Worthington , 305 N.C. at 487, 290 S.E.2d at 605 ). The trial court here was in the best position to determine whether the jury's verdict on mitigation of damages went against the greater weight of the evidence, including whether the jurors were affected by the experts' suggestion that Pamela's failure to return specifically to Dr. Rosner caused her health to deteriorate. Accordingly, we affirm the Court of Appeals majority's conclusion that the trial court did not abuse its discretion in setting aside the verdict based on Rule 59(a)(7).[3]
**829 B. Costs
In the second issue in their appeal based on the dissenting opinion, defendants argue that the Court of Appeals majority erred by affirming the trial court's assessment of $175,547.59 in costs against them. Defendants contend that the trial court lacked authority to assess expert witness costs for experts whose testimony concerned the hospital defendants-which the jury did not find liable-rather than Dr. Rosner.
"In actions where allowance of costs is not otherwise provided by the General Statutes, costs may be allowed in the discretion of the court. Costs awarded by the court are subject to the limitations on assessable or recoverable costs set forth in G.S. 7A-305(d), unless specifically provided for otherwise in the General Statutes." N.C.G.S. § 6-20 (2017). N.C.G.S. 7A-305(d) states in pertinent part:
(d) The following expenses, when incurred, are assessable or recoverable, as the case may be. The expenses set forth in this subsection are complete and exclusive and constitute a limit on the trial court's discretion to tax costs pursuant to G.S. 6-20 :
(1) Witness fees, as provided by law.
....
(10) Reasonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts.
(11) Reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings.
Id. § 7A-305(d) (2017). Although the assessment of costs is generally within the discretion of the trial court, see id. § 6-20, "when the validity of an award of costs hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions, the issue before the appellate court is one of statutory construction, which is subject to de novo review." Lassiter ex rel. Baize v. N.C. Baptist Hosps., Inc. , 368 N.C. 367, 375, 778 S.E.2d 68, 73 (2015) (citation omitted).
Here plaintiff requested various costs from defendants, including $89,789.84 for depositions, $85,757.75 for experts at trial, and $458,089.30 for "additional expert witness fees." The trial court ordered **830 that defendants pay plaintiff a lump sum of $175,547.59, which totals the costs requested for depositions and experts' trial testimony.
Defendants contend that this assessment was improper because it included fees connected to the trial testimonies of experts-Drs. Arthur Caplan, Brian Currie, and David Barton Smith-who testified against the hospital defendants rather than against Dr. Rosner. That is, defendants argue, the testimonies of these medical experts cannot support an award of costs against defendants because "[e]ach of these experts expressly did not offer criticisms of Dr. Rosner and, instead, limited their testimony to criticisms of the Hospital Defendants, whom the jury found not liable."
The Court of Appeals rejected this argument, concluding that "defendant [Rosner] fails to establish that ordering payment of these expert fees was an abuse of discretion,"
*773 Justus , --- N.C. App. at ----, 802 S.E.2d at 156 (citation omitted). The dissent, however, rejected both the majority's result as well as the abuse of discretion standard of review it employed. The dissent stated that the question of which experts' trial testimony could support the assessment of costs against defendants is a legal question because it "hinges upon the extent to which the trial court properly interpreted the applicable statutory provisions ..., which is subject to de novo review." Id. at ----, 802 S.E.2d at 160 (Tyson, J., concurring in part and dissenting in part) (quoting Lassiter ex rel. Baize , 368 N.C. at 375, 778 S.E.2d at 73 ). The dissent then concluded that "the trial court misinterpreted N.C. Gen. Stat. § 7A-305(d)(11) and awarded costs for three of plaintiff's expert witnesses, who offered testimonies directed against actions by the hospital defendant[s], which were acquitted by the jury, and did not testify to Dr. Rosner's standard of care or alleged acts of negligence." Id. at ----, 802 S.E.2d at 160.
These experts' testimonies did, however, address issues relating to Dr. Rosner in addition to the hospital defendants. For instance, both Dr. Caplan and Dr. Smith testified that Dr. Rosner's surgeries were experimental, which was one aspect of the negligence claim against him. And Dr. Currie testified to another aspect of Dr. Rosner's alleged negligence in that he allowed the hospital to market his services inaccurately. Given that the testimonies of these experts did bear to some extent upon issues concerning Dr. Rosner's negligence, we do not face the statutory construction issue defendants assert is present.
Accordingly, rather than applying de novo review, the only question here is whether the trial court abused its discretion in its award of costs. As plaintiff observes, the total award of $175,547.59 corresponds to the **831 costs itemized in plaintiff's motion for the stenographic and videographic costs of taking depositions ($89,789.84) and the expert fees incurred to provide trial testimony ($85,757.75), both categories of costs allowable under statute. See N.C.G.S. § 7A-305(d)(10) ("Reasonable and necessary expenses for stenographic and videographic assistance directly related to the taking of depositions and for the cost of deposition transcripts."); Id. § 7A-305(d)(11) ("Reasonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings."). We cannot conclude that the trial court abused its discretion in its award of costs and we therefore affirm the Court of Appeals on this issue.
Defendants' remaining arguments are based upon our allowing their petition for discretionary review on the following issues:
ADDITIONAL AND ALTERNATIVE ISSUES TO BE BRIEFED
I. The trial court erroneously granted directed verdict against Defendants-Appellants on their contributory negligence defense where the evidence showed Ms. Justus' medical problems including kyphosis were caused by her failure to follow medical advice and continue a course of treatment or seek treatment for worsening symptoms.
II. The Court of Appeals erroneously granted Plaintiff a partial new trial on the sole issue of damages where: (A) Plaintiff did not challenge the jury's damage calculation; and (B) Plaintiff's efforts to overturn the jury verdict implicated the entire verdict requiring a new trial on both liability and damages.
The dissenting opinion of the Court of Appeals, on which the Notice of Appeal was based, concurred with the majority's holding that the trial court did not err in granting directed verdict on contributory negligence; that issue is raised by Issue I above in defendants' petition for discretionary review. As to this issue, we now conclude that discretionary review was improvidently allowed.
In their argument in support of Issue II above, defendants contend that the Court of Appeals erroneously remanded for a new trial on damages only. The dissenting opinion specifically agreed with the majority's conclusion that the trial court erred in altering the amount of damages to be awarded. The dissenting opinion, however, did not address the following portion of the majority opinion:
**832 Rule 59(a) authorizes a new trial limited to issues that do not affect the entire verdict, such as, in this case, damages. Accordingly, we remand this matter to the trial court for a new trial on the issue of damages *774 only. Defendant is not restricted from presenting any evidence which bears on plaintiff's alleged damages and Pamela Justus's failure to mitigate her damages.
Justus , --- N.C. App. at ----, 802 S.E.2d at 153.
As to the second issue in defendant's petition for discretionary review, we conclude that the Court of Appeals was within its authority to vacate the trial court's amended judgment and order that a new trial be held with respect to the issue of damages. In seeking relief from the original judgment, plaintiff relied upon N.C.G.S. § 1A-1, Rule 59(a), which authorizes a trial judge to grant "[a] new trial" "to all or any of the parties and on all or part of the issues" for a number of different reasons. For the reasons stated by the Court of Appeals, we conclude that the trial court erred by simply striking the jury's mitigation determination and entering judgment in favor of plaintiff and against defendant in the amount of the jury's damages award. Bethea v. Town of Kenly , 261 N.C. 730, 732, 136 S.E.2d 38, 40 (1964) (per curiam) (holding that, while "the judge should have set aside the verdict ... if he deemed it against the weight of the evidence or considered the damages excessive," instead, "he attempted to change the verdict, ... and this he could not do" (citing Winn v. C.W. Finch & Son , 171 N.C. 272, 277, 88 S.E. 332, 334-35 (1916) ) ). Moreover, we see no reason why the Court of Appeals was required to remand this case to the trial court for a determination either of whether relief should be granted at all or whether to grant a full or partial new trial.
While we are unaware of any decision of this Court involving a fact pattern identical to the unusual one here, even a cursory examination of the record reveals that the trial court determined that plaintiff was entitled to relief from what the jury did when it greatly reduced the damages awarded due to Pamela's alleged failure to mitigate. Furthermore, the plain language of N.C.G.S. § 1A-1, Rule 59(a) states explicitly that, once that determination had been made, the only relief that the trial court may award to plaintiff is a new trial. Because this one and only remedy was available to the trial court, and because the trial court's substantive decision that plaintiff was entitled to relief from the jury's original verdict has not been disturbed on appeal, we see no reason why this case should be remanded to the trial court to choose between awarding plaintiff a new trial or denying plaintiff any relief from the jury's verdict **833 at all.[4] As a result, given that the trial court has already decided that relief should be afforded to plaintiff and given that the trial court's only option was to award a new trial in whole or in part in the event of such a determination, we conclude that the Court of Appeals had ample authority to order implementation *775 of the relief that could be properly afforded to plaintiff on remand.
In addition, we conclude that the Court of Appeals did not err by awarding plaintiff a new trial on the issue of damages only. This Court has previously held that, in the event that a reviewing court determines that a trial court has erred ruling on a motion made pursuant to N.C.G.S. § 1A-1, Rule 59(a), the reviewing court has the authority to determine the scope of the new trial that should be awarded even though the trial court did not address that issue. Robertson v. Stanley , 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974) (overturning the trial court's decision to deny the plaintiff's motion for a partial new trial predicated upon an inconsistent jury verdict and ordering a full new trial on the grounds that "[i]t is settled beyond controversy that it is entirely discretionary with the Court, Superior or Supreme, whether it will grant a partial new trial" (quoting Table Rock Lumber Co. v. Branch , 158 N.C. 251, 253, 73 S.E. 164, 165 (1911) ) ). In addition, we are not persuaded that "the error in **834 assessing damages tainted the entire verdict," making it "unfair to the defendant to order a partial new trial on the issue of damages alone." Id. at 569, 206 S.E.2d at 196. Unlike in Robertson , the jury here did not find, in essence, that a minor plaintiff who might or might not have been contributorily negligent and who suffered injuries that resulted in $1,970.00 in medical expenses was entitled to no compensatory damages at all. Instead, the jury here was properly instructed to determine the amount of damages that plaintiff was entitled to recover only after having resolved the issue of liability. Housing, Inc. v. Weaver , 305 N.C. 428, 443, 290 S.E.2d 642, 651 (1982) (noting, in upholding the trial court's decision to award a partial new trial on the issue of damages, that when the case was initially tried, "[t]he jurors were instructed further specifically to answer the question of liability before considering the issue of the amount of damages "). The jury then reduced the amount of damages awarded to plaintiff by what the trial court believed to have been an unjustified finding of "failure to mitigate" based upon a misapprehension of the steps plaintiff was required to take to properly mitigate her damages. Despite the fact that the jury did not specify the theory upon which it found defendants to have been negligent, the record contains no indication that the applicable measure of damages would have varied depending upon the theory of liability that the jury found to have merit. Weyerhaeuser Co. v. Godwin Bldg. Supply Co. , 292 N.C. 557, 564, 234 S.E.2d 605, 609 (1977) (requiring a full new trial, rather than a partial new trial on the issues of damages alone, on the grounds that "it is impossible for us to determine upon what theory the jury relied in finding a breach [of contract] and whether the different theories of breach would have resulted in different measures of damages"). The trial court clearly did not believe that the jury's verdict with respect to the mitigation issue tainted its verdict on the liability issue, since it simply struck the jury's mitigation verdict without in any way disturbing the liability verdict. We see no reason to second-guess that determination or the Court of Appeals' decision to implement that determination in the proper manner. As a result, even though the $1.00 difference between the amount of the jury's damage award and the amount of the "failure to mitigate" offset that the jury deemed to be appropriate appears to be anomalous, nothing in the record persuades us that this anomaly stemmed from a compromise involving the issue of liability rather than the jury's acceptance of the argument that the trial court found to have been erroneously advanced by defendants' expert witnesses-specifically, that Pamela failed to properly mitigate her damages because she did not return to defendant Rosner for further treatment. Therefore, in light of the unusual facts disclosed by the record here, we cannot say **835 that the Court of Appeals erred by awarding a partial, rather than a full, new trial in this case.
III. CONCLUSION
For the foregoing reasons, we *776 affirm the decision of the Court of Appeals to vacate the trial court's amended judgment and order a new trial with respect to the issue of damages and remand this case to that court for further remand to the Superior Court, Henderson County, for retrial. Moreover, we affirm the decision of the Court of Appeals on the issue of costs. As for Issue I in defendants' petition for discretionary review, we conclude that discretionary review was improvidently allowed; accordingly, the Court of Appeals' disposition of this issue remains undisturbed. As for Issue II in defendants' petition for discretionary review, we affirm for the reasons discussed here.
AFFIRMED IN PART AND REMANDED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED IN PART.

Plaintiff dismissed his individual claims during the charge conference.

Defendants find "particularly troublesome" that in Finding No. 8 the trial court characterized the "demeanor" of defendants' experts as contributing to an impression that Pamela had an obligation to return specifically to Dr. Rosner and that she allowed her condition to worsen by failing to do so. This challenge to the trial court's discussion of demeanor is unpersuasive because one of the very reasons we apply an abuse of discretion standard to a trial court's ruling on a Rule 59 motion is that the trial judge is present at trial and is thus in the best position to assess the impact of witnesses' testimony on the jury. See In re Buck , 350 N.C. at 628, 516 S.E.2d at 863 ("Only the trial court has directly observed the evidence as it was presented and the attendant circumstances, as well as the demeanor and characteristics of the witnesses ." (emphasis added) ).

Like the Court of Appeals majority, we decline to address the appropriateness of awarding relief under other subsections of Rule 59.

Although we have stated on many occasions that, "[w]here a ruling is based upon a misapprehension of the applicable law, the cause will be remanded in order that the matter may be considered in its true legal light," Nationwide Mut. Ins. Co. v. Chantos , 298 N.C. 246, 252, 258 S.E.2d 334, 338 (1979) (citing 1 Strong's North Carolina Index 3d: Appeal and Error § 63), we do not believe that this principle has any bearing upon the proper resolution of this issue. Instead, the "misapprehension" rule has typically been applied to require the remanding of trial court decisions concerning issues in which either the exercise of discretion was appropriate, Wilson v. McLeod Oil Co. , 327 N.C. 491, 523, 398 S.E.2d 586, 603 (1990) (overturning a trial court's decision to deny a motion for leave to amend a complaint to add an additional third-party defendant based upon the mistaken belief that none of the claims asserted in the plaintiffs' original complaint survived the defendants' summary judgment motion); Chantos , 298 N.C. at 251-52, 258 S.E.2d at 337-38 (overturning a trial court's refusal to set aside the verdict as against the greater weight of the evidence based upon the mistaken belief that this Court had determined that the issue in question could only be resolved by a jury), or to resolve a disputed issue of substantive law in light of the relevant facts, Hanford v. McSwain , 230 N.C. 229, 233-34, 53 S.E.2d 84, 87-88 (1949) (overturning a trial court decision denying a defendant's request for relief from a judgment because the defendant had failed to show the existence of a meritorious defense when the defendant had, in fact, demonstrated the potential existence of such a defense); McGill v. Town of Lumberton , 215 N.C. 752, 754, 3 S.E.2d 324, 326 (1939) (overturning an Industrial Commission decision to deny an application for workers' compensation benefits on the grounds that the Commission had failed to recognize the existence of a presumption that a compensable injury had occurred when the employee suffered a violent death). As a result of the fact that the trial court had no authority to grant any relief aside from a new trial, the "misapprehension" principle simply does not apply here.